**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMIL D.,[1]** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 21-cv-464 (GMH)** |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

      Jamil D. ("Plaintiff") brought this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI") benefits and Disability Insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff alleges that the Administrative Law Judge ("ALJ") who adjudicated his claim erred by determining that he had the residual functional capacity ("RFC") to perform light work with some additional limitations. Specifically, Plaintiff asserts that the ALJ failed to conduct a function-by-function analysis in determining his RFC and failed to properly evaluate evidence which could support limitations beyond those reflected in the RFC. The Commissioner argues that the ALJ correctly determined Plaintiff's RFC and that no function-by-function analysis is necessary. And

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Mar. 28, 2022).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted in place of her predecessor. *See* Fed. R. Civ. P. 25(d).

even if such an analysis was required, the Commissioner says, the failure to conduct one is no reason for remand.  Based on the parties' arguments and review of the record,[3] the Court will grant the Commissioner's motion and deny Plaintiff's motion.

## I.      BACKGROUND

### A.      Statutory and Regulatory Framework

To be eligible for SSI benefits and DIB under the Social Security Act, the Social Security Administration must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[4]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[5]

Step three:  whether the claimant's impairment is equivalent to one of the disabling

---

[3] The relevant docket entries for purposes of this Report and Recommendation are (1) the administrative record (ECF No. 11 and attachments), (2) Plaintiff's motion for judgment of reversal (ECF No. 15), (3) Defendant's motion for judgment of affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 16), and (4) Plaintiff's opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition to Plaintiff's motion for judgement of reversal (ECF No. 20).  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security DIB claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration ("SSA")] will find that [the claimant is] not disabled."  20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[5] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

After step three, the ALJ determines the claimant's RFC—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[6] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[7]

See 20 C.F.R. §§ 416.920, 404.1520; see also Butler v. Barnhart, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability.  Affirmative answers to questions 3 or 5 establish disability." Hines v. Bowen, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation. Callahan v. Astrue, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform. Id.  In making this determination, an ALJ may call a vocational expert to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy. Id. at 90.

---

[6] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1); see also 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is mandated.  20 C.F.R. § 416.920(a)(4)(iv); see also 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[7] At the fifth step, the ALJ may, "[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines" (also known as "the grids") to determine whether the claimant is disabled. Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." Rosa, 168 F.2d at 78 (alteration in original) (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)).

### B.    Plaintiff's Disability Claims and Procedural History

Plaintiff was born on May 18, 1978, and completed one year of college.  ECF No. 11-3 at 2; ECF No. 11-6 at 4.  Plaintiff says he received degree for massage therapy.  ECF 11-2 at 40.  He has a varied occupational history, having worked as a "mental health technician, cleaner, kitchen helper, construction worker, warehouse supervisor, stocker, and material handler."  ECF 15-1 at 2.  Plaintiff last worked in 2017.  ECF No. 11-2 at 19.

In January 2018, Plaintiff filed a DIB claim, and added an application for SSI benefits in May 2018.  *Id.* at 16.  In those applications, Plaintiff claimed disability status beginning on December 30, 2017, due to a variety of physical impairments:  "pain in his low back, right hip, right leg, and right ankle; and numbness and weakness in his right lower extremity due to a gunshot wound."  *Id.* at 24.  Plaintiff's claim was denied in June 2018, and the denial was affirmed in August 2018.  *Id.* at 16.  Plaintiff then requested a hearing before an ALJ.  *Id.*  At the hearing, held on January 28, 2020, the ALJ took testimony from Plaintiff and a vocational expert.  *Id.*

In his opening statement, Plaintiff's counsel explained that many of Plaintiff's physical impairments could ultimately be traced back to a gunshot wound Plaintiff suffered in 2005.  *Id.* at 38.  While Plaintiff was able to return to work following that incident, he was involved in a motor vehicle accident in 2017 that "exacerbated" Plaintiff's existing injuries and spawned new ones.  *Id.*  Counsel also stated that Plaintiff had post-traumatic stress disorder ("PTSD") and major depressive disorder, both of which cause "significant symptoms."  *Id.*  Counsel then highlighted records reflecting Plaintiff's diminished range of motion and trunk strength and need for frequent rest.  *Id.* at 39.

Plaintiff then testified that he "went through partial college" and obtained a degree for massage therapy.  *Id.* at 40.  He also studied "food handling," "medicine handling," and

"behavioral health." *Id.* at 40–41.  Plaintiff indicated that he last worked as a mental health counselor in 2017.  *Id.* at 41–42.  In that role, "was assigned to group homes around the D.C. area" and had "maybe seven clients per house."  *Id.* at 63.  He ensured that those clients ate, took their medication, and completed programming.  *Id.* at 64.  Plaintiff also had work experience at a construction company and an events company, as well as a warehouse manager and cleaner, a grocery store packer and stocker, and as a chef in a retail store.  *Id.* at 64–67.

At some point in 2017, Plaintiff was involved in motor vehicle accident, after which he stopped working.  *Id.* at 42–43.[8]  Plaintiff says the accident resulted in back and pelvic pain which required physical therapy in which he "had to learn how to walk . . . again."  *Id.* at 43.  Plaintiff stated that he lived with a friend and the spent most of his day "laying down" because he "can't have too much movement."  *Id.* at 43–44.  The friend who he lives with brings him meals.  *Id.* at 44.  He does not assist with household cleaning, shopping, and does not drive, instead using ride-share services to get around.  *Id.*  He does still spend time with his family outside the home.  *Id.* at 44–45.  Plaintiff also testified that, at the time of the administrative hearing, he was taking several medications, including pain medication and medication related to his mental impairments.  *Id.* at 45–46.  Plaintiff also indicated that he smokes marijuana to relieve his pain, and that "it helps." *Id.* at 46–47.  He later testified that TENS therapy also provides pain relief.  *Id.* at 61.

The ALJ then asked Plaintiff why he thought he was disabled and could not work.  Plaintiff responded that he could not "stand for long periods of time or walk," had "problems bending over and standing back up," and could not "make quick, steady, fast-paced movements" without "more pain."  *Id.* at 46.  Plaintiff also expressed concerns about falling and indicated that he had fallen recently.  *Id.*  He stated that he does not use stairs for this reason.  *Id.*

---

[8] Although Plaintiff was not able to recall the timing of the crash, other records indicate that the accident occurred in April 2017.  *See* ECF 11-7 at 45.

In response to questions posed by his attorney, Plaintiff testified that he has pain in his neck that radiates down his back when he breathes heavily or coughs. *Id.* at 49. The pain is daily, but Plaintiff "get[s] slight relief" from medication. *Id.* at 50. Plaintiff rated the pain as an 8.5 or 9 out of 10, and testified that it had been ongoing since the motor vehicle accident in 2017. *Id.* He also stated that he gradually lost the range of motion in his arms and legs. *Id.* at 51. Plaintiff added that his walking has been abnormal. *Id.* In addition, he says he was told by his doctors that the bullet wound from 2005 had caused nerve damage. *Id.* Spinal injections did not remedy those issues, according to Plaintiff. *Id.*

Plaintiff further testified that he had nerve issues in his right arm. *Id.* at 51–52. The condition feels "constricting" and can happen "anytime [Plaintiff] sits too long." *Id.* at 52. Plaintiff characterized this as his arm "locking up" to the point that he cannot lift it above his shoulder. *Id.* at 52–53. As a result, he said he had limited use of his right arm and cannot carry objects "heavier than a big cup or a big mug." *Id.* Plaintiff said this issue has been "going off and on since [he] got shot" in 2005 and that it has worsened over the years. *Id.* at 53. Plaintiff has more strength in his left arm, but even using it "causes problem with [his] right side." *Id.* at 56. He later testified that the nerve issues sometimes cause "uncontrollable shaking and unsteadiness." *Id.* at 63. Overall, "the nerve pain pretty much prevents [him] from just doing a lot of fast movement, picking up things . . . [and] walking." *Id.* at 63.

Plaintiff also described back pain that would radiate into his legs. *Id.* at 53–54. According to Plaintiff, as few as 15 steps could trigger this pain. *Id.* at 54. He testified he could walk only "maybe 30, 40 strides" per day. *Id.* at 54–55. He also said the maximum he could stand or sit in place for any one time is 30 minutes. *Id.* Plaintiff further testified that his pain required him to lie down throughout the day, and that those rest breaks would last "for a couple of hours." *Id.* at 55.

Lying down occasionally had been the norm in Plaintiff's life for the last four to five years.  *Id.* at 56.

Plaintiff then testified to loss of sensation on his right side.  *Id.* at 57.  Plaintiff estimated that he had loss of feeling in 65 percent of his right leg, and that he doesn't "feel vibrations."  *Id.* He said he could not feel the bottom of his foot.  *Id.* at 58.  This loss of sensation also extends to Plaintiff's right upper body, including his right arm.  *Id.*

The testimony then transitioned to Plaintiff's mental impairments.  Because these impairments do not form the basis of Plaintiff's appeal, the Court offers only a brief summary. Plaintiff testified that lack of sleep and loss of focus were symptoms of his mental impairments. *Id.* at 58.  Plaintiff rarely leaves the house he lives in other than for doctor's appointments.  *Id.* at 59.  He also tends to isolate in his room.  *Id.* at 60.

Following Plaintiff's testimony, the ALJ posed a series of hypothetical questions to a vocational expert.  In response to questioning by the ALJ regarding Plaintiff's past relevant work, the vocational expert testified that Plaintiff's past relevant work consisted of working as a mental health/group home technician, cleaner, kitchen helper, construction worker, warehouse supervisor, stocker, and forklift operator.  *Id.* at 68–69.  The ALJ then asked the vocational expert whether someone who was limited to light work and "could not climb ladders or similar devices or work in hazardous environments," such as "heights or around dangerous machinery" could return to any of those positions.  *Id.* at 70.  The expert said that a person so limited could return to work as a warehouse supervisor.  *Id.*  However, the expert then explained that because Plaintiff performed his prior warehouse supervisor role at a "heavier" level, he "would not be able to perform it as he performed it."  *Id.*  The expert also said that Plaintiff could return to his kitchen helper role.  *Id.*

The ALJ then asked the vocational expert if there were "light, unskilled jobs that could be

performed given these [restrictions]." *Id.* at 71. The expert testified that such a person could find

work as a marker and a router. *Id.* The ALJ then asked if there was sedentary work available for

a person with the same restrictions—that is, unskilled jobs that did not involve climbing ladders

or "or similar devices or work in hazardous environments." *Id.* at 70–71. A person with those

limitations could find work as a document clerk and an information clerk. *Id.* at 71–72. Finally,

the ALJ queried whether a hypothetical worker who "might be off-task or absent from work often

or frequently due to distractions that could be caused by things like pain or fatigue or the need to

lie down or take an extra break" for "two or more times a month" or off-task two or more hours

out the workday could find work. *Id.* at 72. Those limitations would eliminate all work, the

vocational expert said. *Id.* at 72–73.

### C.    The ALJ's Decision

The ALJ issued his decision denying benefits on February 19, 2020. ECF No. 11-2 at 16–

29. That decision became the final decision of the Commission when the Appeals Council denied

Plaintiff's request for review on January 7, 2021. ECF No. 11-2 at 2–4.

#### 1.    Substantial Gainful Employment, Severe Impairments, and the Listings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since the alleged disability onset date of December 30, 2017. ECF No. 11-2 at 19.

At step two, the ALJ found that Plaintiff had eight impairments that should be classified as

"severe" under the regulations: chronic pain and right sided weakness with a history of gunshot

wound, inguinal lymphadenopathy, minor degenerative changes to the lumbar spine with

lumbosacral radiculopathy, chronic pain syndrome, and cervical spondylosis with radiculopathy.

*Id.* The ALJ found that the following impairments were non-severe: hypertension, right carpal

tunnel syndrome, and reactive depression. *Id.* at 20–21. He also determined that "claimant's

alleged symptoms of fractured right ankle" were not a medically determinable impairment for want of "objective evidence to substantiate" the fracture. *Id.* at 20.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any of the impairments in the Listings. *Id.* at 22–23. Specifically, he considered Listing 1.02 for major dysfunction of one or more joints due to any cause. *Id.* at 22. That Listing was not met, the ALJ found, because "the evidence does not demonstrate that the [Plaintiff] has the degree of difficulty in performing fine and gross movements" or "the degree of difficulty in ambulating" the Listing requires. *Id.* The ALJ then found that Plaintiff's "severe spinal impairments" did not meet Listing 1.04, which "requires the presence of a compromise of a nerve root." *Id.* at 23. The record reflected no such evidence, the ALJ concluded. *Id.*

### 2. Plaintiff's RFC

In between steps three and four, the ALJ concluded that Plaintiff has the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot climb ladders or similar devices. The claimant cannot work in hazardous environments.

*Id.* at 23. The regulations define "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). Social Security Ruling ("SSR") 83-10 further explains that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Titles II and XVI: Determining Capability to do Other work—the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

In determining that RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms.  ECF No. 11-2 at 25.  However, the ALJ also found that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent" with the record evidence.  *Id.*  To explain this conclusion, the ALJ discussed the evidence in the record, including imaging and testing results, treatment notes, Plaintiff's reports of his symptoms, the clinical findings of Plaintiff's treating physicians, and the opinions provided by State agency consulting physicians.

The ALJ began with a discussion of Plaintiff's allegations of disability and his hearing testimony.  *Id.* at 24.  The ALJ recounted Plaintiff's severe impairments and his allegations concerning the limiting effects of his impairments, including restrictions on bending, sitting, standing, walking, climbing, lifting, pulling, and other "activities of daily living, such as washing dishes, laundry, walking his dog, playing with his son, and walking to the store."  *Id.*  The ALJ also discussed some of the treatments Plaintiff had attempted, including multiple medications, spine injections, and the use of a back brace.  *Id.*  The discussion then turned to Plaintiff's hearing testimony in which he indicated pain and loss of sensation over large swathes of his body, particularly on the right side.  *Id.*  The ALJ accurately recounted Plaintiff's statements concerning his physical limitations, including "difficulty lifting light objects."  *Id.*

The ALJ concluded, however, that these allegations were "inconsistent with the objective medical evidence."  *Id.*  Here again, the ALJ began by acknowledging the record evidence reflecting Plaintiff's allegations, including his reports of "pain in his neck [and] right hand . . . during the period at issue."  *Id.*  Further, the ALJ found that nerve testing showed cervical radiculopathy, which can cause pain, weakness, numbness, and tingling in the upper extremities. *Id.*; *see* Radiculopathy, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/

conditions-and-diseases/radiculopathy (last visited Mar. 29, 2022).  The ALJ contrasted these findings with the "mostly unremarkable" "imaging of [Plaintiff's] thoracic spine, chest, right hip, and right ankle," which showed no "other acute abnormalities." *Id.*  The ALJ also acknowledged records reflecting an altered gait, "reduced strength in [the] right upper extremity and limited range of motion in his lumbar spine, right upper extremity, and right lower extremity." *Id.*

Yet aside from these issues, the ALJ found that Plaintiff "exhibited mostly normal objective physical status" over 2017, 2018, and 2019.  *Id.* at 25.  The ALJ referred to medical records showing, among other things, normal coordination, balance, and reflexes, independent ambulation (i.e., walking), normal range of motion in the right hip and ankle, and intact sensation. *Id.*  The decision also notes that Plaintiff's symptoms were treated conservatively with a combination of medication, injections, physical therapy, and braces.  *Id.*  Some of these treatments were effective in treating Plaintiff's pain, allowing "him to do more with less pain."  *Id.* (quoting ECF No. 11-7 at 196, 199).

It was at this point that the ALJ concluded the Plaintiff's allegations concerning the "intensity, persistence, and limiting effects of his symptoms" were "inconsistent with, and generally not supported by, the objective medical evidence of record."  *Id.*  Although imaging other testing did show bullet fragments near Plaintiff's right hip, "minor" pathology in his lower back, and radiculopathy (i.e., symptoms of a pinched nerve) in his upper back, testing otherwise showed "mostly unremarkable signs."  *Id.*  The ALJ rehashed his earlier findings, explaining that testing showed normal coordination, balance, and reflexes, independent ambulation, normal range of motion in the right hip and ankle, and intact sensation.  *Id.*  He also emphasized that Plaintiff's physicians "noted prescribed medications reasonably controlled [his] symptoms."  *Id.*

Turning to the opinion evidence, the ALJ credited the conclusions of the state agency

consulting physicians as "generally persuasive." *Id.* at 26.  Those doctors both found that Plaintiff could perform light work.  Consistent with 20 C.F.R. §§ 404.1520c(b) and 416.920c(b), the ALJ explained why these physicians' findings were both supportable and consistent with the record. As to supportability, the ALJ discussed how both doctors reviewed and cited "substantial portions of the [Plaintiff's] medical record" in their reports.  ECF No. 11-2 at 26.  The ALJ found significant that both physicians relied on records showing "normal coordination, mostly normal gait, normal station, overall strength 4/5 to 5/5, and no signs of tenderness, gross motor weakness, or sensory deficits." *Id.*  The findings of the state agency consulting physicians were also consistent with the other record evidence, the ALJ concluded.  *Id.*  Here, the ALJ referred back to his earlier discussion of Plaintiff's normal coordination, balance, and reflexes, independent ambulation, normal range of motion in the right hip and ankle, and intact sensation.  *Id.*

The ALJ ultimately concluded that Plaintiff was not disabled, though he could not perform work that required climbing ladders or working in hazardous environments.  *Id.*  He also found that Plaintiff's "allegations are inconsistent with his statements regarding daily activities and the objective medical evidence." *Id.*

### 3.    Past Relevant Work and Other Jobs Available in the National Economy

At step four, the ALJ found that Plaintiff had past relevant work as a group home technician, cleaner, kitchen helper, construction worker, warehouse supervisor, stocker, and forklift operator/material handler.  *Id.* at 26–27.  Although the vocational expert testified that Plaintiff could return to the kitchen helper and warehouse supervisor roles, the ALJ concluded that Plaintiff's RFC did not, in fact, allow him to take on those type of jobs.  *Id.* at 27.

However, the ALJ's step five inquiry found that there are other jobs existing in the national economy that Plaintiff is able to perform, pointing to the vocational expert's testimony from the

hearing.  *Id.*  When asked if there were jobs in the national economy for an individual with

Plaintiff's limitations—that is, an individual limited to light work that does not require climbing

ladders or other similar devices and no work in hazardous environments—the vocational expert

testified that an individual matching this description could work as a marker and a router.  ECF

No. 11-2 at 28, 71.  In the alternative, the ALJ found that even if Plaintiff could not perform light

work and instead was limited to sedentary work, there would still be work available for him.  On

this point, the ALJ cited the vocational expert's hearing testimony that a person in Plaintiff's

position who could perform sedentary work only could still find work as a document preparer and

an information clerk.  *Id.* at 29, 71–72.  Because there were jobs available in the national economy

for an individual with Plaintiff's age, education, work experience, and RFC, the ALJ found that

Plaintiff was not disabled.  *Id.* at 29.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the

Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision

if it is based on substantial evidence in the record and the correct application of the relevant legal

standards.  *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not

based on substantial evidence or that incorrect legal standards were applied.  *Lane-Rauth v.*

*Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Substantial evidence is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It

requires "more than a scintilla [of evidence], but can be satisfied by something less than a

preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C.

Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). "The substantial evidence standard requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Id.*; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law").  However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)).  Moreover, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017).  *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

### III.   DISCUSSION

Plaintiff's appeal revolves solely around the ALJ's determination of his RFC.   As explained, the ALJ found that Plaintiff had the RFC to perform light work that did not involve "climb[ing] ladders or similar devices" and no work "in hazardous environments." *Id.* at 23.  For two reasons, Plaintiff says that was error.  *First*, Plaintiff asserts that the ALJ did not perform the "function-by-function" analysis required by the Social Security Administration to determine the RFC.  *Second*, Plaintiff contends that the ALJ overlooked "pertinent evidence" that supports additional limitations beyond those reflected in the RFC finding.  Plaintiff's first assignment of error falls flat, as do his contentions concerning the ALJ's assessment of the evidence.

### A.   Function-by-Function Analysis

In this case, the ALJ concluded that Plaintiff could perform light work with some environmental restrictions only after engaging in a narrative discussion of the medical evidence, including evidence supporting Plaintiff's symptoms and limitations.  *See* ECF 11-2 at 23–25.  That was not sufficient, Plaintiff says, because the ALJ did not "*first* identify a claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  ECF 15-1 at 6.  Those "functions" are set forth in the Social Security Administration's regulations and include:  "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)."  20 C.F.R. §§ 404.1545(b), 416.945(b).  Although Plaintiff is correct that the ALJ did not specifically address each of these functions before concluding that he could perform light work, this error is not cause for reversal or remand.

Plaintiff centers his argument on the requirements of Social Security Ruling 96-8p and asserts they were not followed in this case.  "SSR 96-8p states, in part, that the assessment of an

individual's RFC 'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis' including the 'seven strength demands' included in 20 C.F.R. § 416.945(b)—sitting, standing, walking, lifting, carrying, pushing, and pulling; once those are determined, 'the RFC may be expressed in terms of the exertional levels of work.'" *Simmons v. Saul*, No. 18-CV-1293, 2019 WL 12251882, at *13 (D.D.C. Sept. 30, 2019) (quoting Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1, 5 (S.S.A. July 2, 1996)), *report and recommendation adopted*, 2019 WL 12251883 (D.D.C. Oct. 22, 2019). However, SSR 96-8p "'does not provide the specific mandate' that an ALJ 'must undertake a *specific* discussion of each of the seven functions'; rather the ruling requires only '*consideration* of all the factors, not *enumeration* of all the factors.'" *Simmons*, 2019 WL 12251882, at *13 (quoting *Banks v. Astrue*, 537 F. Supp. 2d 75, 84–85 (D.D.C. 2008)). So, "the fact that the ALJ did not explicitly and separately discuss the number of hours Plaintiff can stand, the number of hours he can walk, the number of hours he can sit, the number of hours and the amount of weight he can lift, and the number of hours and amount of weight he can carry during a work day does not require a finding that the Commissioner's decision was not supported by substantial evidence." *Id.* Rather, all the ALJ need do is "provide[] a thorough narrative discussion of the evidence of record regarding Plaintiff's abilities to perform relevant work-related functions in areas in which Plaintiff alleged limitation." *Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017); *see also Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) ("This court has found that when 'the ALJ provided a thorough narrative discussion of [Plaintiff's] limitations,' and has built a 'logical bridge' from the evidence to his conclusion, the RFC analysis

does not require 'written articulation of all seven strength demands.'" (quoting *Banks*, 537 F. Supp. 2d at 85)).[9]

Accordingly, Plaintiff's assertion that the ALJ erred merely by "fail[ing] to evaluate the Plaintiff's abilities to stand, walk, or sit" is incorrect.  ECF 15-1 at 6; *see, e.g.*, *Kim M.*, 2021 WL 4033060, at *7 ("[T]o the extent that Plaintiff contends that the ALJ's opinion must include an analysis that addresses in writing each and every work-related function listed in SSR 96-8p, that position has been rejected."); *Simmons*, 2019 WL 12251882, at *13 ("To the extent that Plaintiff argues that the absence of explicit and separate evaluations of each of the relevant strength categories in itself requires remand (or reversal), he is mistaken.").  Again, the inquiry here is not whether the ALJ explicitly assessed each and every function, but whether the ALJ "provided a sufficient discussion of the record evidence, connected that discussion to the limitation included in Plaintiff's RFC, and explained the" consideration of opinion evidence.  *Kim M.*, 2021 WL 4033060, at *8.  To adopt Plaintiff's "function-by-function" requirement would elevate form over substance.  In this case, the ALJ's narrative discussion of Plaintiff's limitations was sufficient.

As explained, the ALJ began the RFC analysis by recounting Plaintiff's allegations concerning his disabling impairments.  Specifically, the ALJ noted Plaintiff's claims concerning "difficulty bending, sitting or standing for short periods, walking more than half a block at one

---

[9] To be sure, courts in this District have noted that there was "a split among members of this Court about whether a narrative function-by-function analysis is required under SSR 96–8p." *Charles v. Astrue*, Civil Action No. 10–02038, 2012 WL 1194707, at *6 (D.D.C. April 11, 2012) (comparing *Lane-Rauth*, 437 F. Supp. 2d at 68, with *Banks*, 537 F. Supp. 2d at 84).  "[A]lthough the D.C. Circuit has not addressed that specific question," the weight of the recent authority is that the ALJ's failure to complete a function-by-function analysis is not reversible error.  *Simmons*, 2019 WL 12251882, at *13.  That is also the position of "a number of other Courts of Appeals," which "have indicated that 'an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms.'"  *Kim M. v. Kijakazi*, No. 20-CV-2072, 2021 WL 4033060, at *7–8 (D.D.C. Sept. 3, 2021) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (collecting cases from the Sixth, Seventh, Eighth, and Ninth Circuits)); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (adopting the reasoning of *Cichocki* and rejecting "a per se rule requiring remand where the ALJ does not perform an explicit function-by-function analysis").

time, climbing stairs, lifting [and] pulling." ECF 11-2 at 24. Likewise, the ALJ recounted Plaintiff's testimony concerning pain in his upper and lower extremities, and "difficulty lifting light objects, walking short distances, sitting or standing for more than 30 minutes at one time, bending, standing up from the seated position, making quick movements, climbing stairs, and performing household chores." *Id.* More, the ALJ acknowledged that Plaintiff's symptoms had some grounding in the objective, medical evidence. The decision highlights imaging showing lower and upper extremity radiculopathy and physical examinations revealing reduced right upper extremity strength and reduced range of motion on the right side of Plaintiff's body. *Id.*

The ALJ then discussed evidence in the record that conflicted with Plaintiff's statements concerning his symptoms and demonstrated that his limitations were not disabling. First, the ALJ cited numerous physical status examinations in which Plaintiff "frequently showed normal coordination, the ability to ambulate independently, normal station, normal range of motion in the right hip, normal deep tendon reflexes, intact sensation to light touch, and no signs of instability or deformity." *Id.* at 25. He also noted records showing "good balance, full range of motion in the right ankle, and no evidence of edema or erythema during the period at issue." *Id.* Evidence like this can be used to discount a claimant's assertions of disabling limitations. *See, e.g.*, *Tallent v. Kijakazi*, No. 4:20-CV-01682, 2022 WL 278751, at *3 (E.D. Mo. Jan. 31, 2022) (upholding ALJ's RFC finding where, as here, the ALJ acknowledged records showing that the claimant "experienced worsening back pain with radiculopathy, tenderness, and limited range of motion," but contrasted that evidence with records showing "intact sensation, normal reflexes, full muscle strength, and normal range of motion" and "normal coordination"); *Mia A. v. Kijakazi*, No. 1:20-CV-16509, 2022 WL 102249, at *5 (D.N.J. Jan. 11, 2022) (upholding the ALJ's RFC determination where, as here, the claimant presented with radiculopathy, yet medical records

showed the claimant was "without any noted assistive device use, atrophy, edema, swelling, joint laxity, joint instability, or deformity as well as" "symmetrical reflexes," "normal sensation," and "good hand-eye coordination"); *Baker v. Colvin*, No. CIV.A. 3:12-00479, 2015 WL 1013981, at *11 (M.D. Tenn. Mar. 9, 2015) (upholding the ALJ's RFC finding where, as here, the ALJ discounted the claimant's lumbosacral radiculopathy with evidence that "the claimant was reportedly ambulating without difficulty and had no observable misalignment, asymmetry, crepitations, defects, tenderness, masses, effusions, decreased range of motion, instability, atrophy, or abnormal strength or tone in the head, neck, spine, ribs, or pelvis," showed "normal reflexes" and "normal coordination"), *report and recommendation adopted*, 2015 WL 1546360 (M.D. Tenn. Apr. 6, 2015); *see also McGee v. Saul*, No. CV 19-0371, 2020 WL 4195003, at *7 (S.D. Ala. July 21, 2020) (limiting a plaintiff with "degenerative spinal conditions, with chronic pain and radiculopathy" to "light work" " off staircases and ladders").  The ALJ further discounted the disabling effects of Plaintiff's limitations by noting his conservative course of treatment, which included "pain medications, therapeutic injections, a lumbar orthosis brace, and physical therapy." ECF No. 11-2 at 25.  That, too, is adequate reason to find physical symptoms not disabling.  *See, e.g.*, *Carter v. Saul*, No. 2:20-CV-10863, 2021 WL 1725522, at *7 (E.D. Mich. Mar. 17, 2021) (upholding the ALJ's RFC finding where the claimant was diagnosed with radiculopathy but "underwent [conservative] treatment in the form of physical therapy and pain relief injections," which "fairly discounts a claimant's allegations of disabling pain"), *report and recommendation adopted sub nom. Carter v. Soc. Sec. Comm'r,* 2021 WL 1720832 (E.D. Mich. Apr. 30, 2021); *Kirkhart v. Comm'r of Soc. Sec.*, No. 1:18-CV-241, 2019 WL 2314860, at *9 (S.D. Ohio May 31, 2019) ("The ALJ reasonably relied on plaintiff's conservative history of treatment primarily with medication and other non-surgical methods to find that her subjective complaints of pain,"

including "back pain and radiculopathy," were "not entirely substantiated."), *report and recommendation adopted*, 2019 WL 4727373 (S.D. Ohio Sept. 27, 2019); *see also Turner v. Comm'r of Soc. Sec.*, No. 2:19-CV-2222, 2021 WL 107234, at \*9 (E.D. Cal. Jan. 12, 2021) (upholding the ALJ's disability finding where the claimant "was diagnosed with spondylosis with radiculopathy of the lumbar spine," but her "course of treatment was conservative, as it consisted of prescription pain medication, physical therapy [and] steroid injections"), *appeal docketed* No. 21-15462 (9th Cir. Mar. 16, 2021).  More, the ALJ accurately identified records showing that these interventions "reduced [Plaintiff's] symptoms" and that "prescribed medications reasonably controlled [his] symptoms."  ECF No. 11-2 at 25.  This, again, gave the ALJ ample reason to conclude that Plaintiff's alleged symptoms were not disabling.  *See, e.g.*, *Hartl v. Comm'r of Soc. Sec.*, No. 18-CV-1313, 2020 WL 1226891, at \*4 (W.D.N.Y. Mar. 13, 2020) (rejecting the claimant's argument that "the ALJ failed to properly evaluate her physical impairments and account for them in the RFC" where the ALJ noted "evidence of cervical radiculopathy" but explained that the claimant "reported improved symptoms with medication and treatment"); *Brigido v. Soc. Sec. Admin.*, No. CV 17-10345, 2019 WL 1245653, at \*5 (E.D. La. Feb. 15, 2019) (upholding the ALJ's RFC finding where the claimant suffered from, among other ailments, "thoracic degenerative disc disease with radiculopathy," but "her pain symptoms" were noted to improve with medication), *report and recommendation adopted*, 2019 WL 1238854 (E.D. La. Mar. 18, 2019); *Beffrey v. Astrue*, No. 11-CV-11310, 2012 WL 1720719, at \*14 (E.D. Mich. May 1, 2012) (upholding the ALJ's disability determination where the claimant claimed "neck pain and radiculopathy," but the record also showed that claimants "condition had improved with medication"), *report and recommendation adopted*, 2012 WL 1720619 (E.D. Mich. May 16, 2012).

The ALJ also considered the medical opinions from the state agency consultants.  As explained, both physicians concluded that Plaintiff could perform light work.  ECF No. 11-2 at 26. The ALJ found those opinions "generally persuasive" because they were drawn from "review[ of] substantial portions of the claimant's medical record" and were "generally consistent with the overall record."  *Id.*  The ALJ emphasized that both doctors found "normal coordination, mostly normal gait, normal station, overall strength 4/5 to 5/5, and no signs of tenderness, gross motor weakness, or sensory deficits."  *Id.*  Notwithstanding Plaintiff's physical impairments, those findings are consistent with light work.  *See, e.g.*, *Conder v. Kijakazi*, No. 1:20-CV-00179, 2021 WL 5758432, at *6 (E.D. Mo. Dec. 3, 2021) (upholding the ALJ's crediting of state agency physicians' conclusion that the claimant could perform light work where the physicians acknowledged claimant's "reduced grip strength, osteoarthritis in his toes, an abnormal gait, a right rotator cuff tear, crepitus, a reduced range of motion in the right shoulder, difficulties walking, and bony deformities in his hands," but also found that "plaintiff otherwise possessed normal strength, sensation, and coordination").  More, the state agency physicians' findings were consistent with the record, which, as the ALJ explained, reflected "the ability to ambulate independently, normal station, normal range of motion in the right hip, normal deep tendon reflexes, intact sensation to light touch, and no signs of instability or deformity during objective exams" and "good balance, full range of motion in the right ankle, and no evidence of edema or erythema during the period at issue."  ECF No. 11-2 at 26.  The ALJ was well within his discretion to find the opinions consistent with the record, such as it was.

Ultimately, the ALJ's RFC limited Plaintiff to light work that did not involve using ladders or other "similar devices" or working in hazardous environments.  The ALJ could rightfully find that those limitations adequately accounted for Plaintiff's impairments, including radiculopathy.

*See, e.g.*, *Frazer v. Comm'r of Soc. Sec.*, No. 5:16-CV-1324, 2018 WL 1033286, at *1–2 (N.D.N.Y. Feb. 22, 2018) (upholding the ALJ's RFC finding that included limitations on "climb[ing] ladders or similar devices or work[ing] at hazardous environments" where the claimant was found to have radiculopathy in the lumbar spine); *Leung v. Berryhill*, No. 17 Civ. 2703, 2017 WL 5953169, at *9–10 (S.D.N.Y. Nov. 30, 2017) (upholding the ALJ's RFC finding that included limitations on "climbing ropes, ladders, or scaffolds" and "working at unprotected heights or with hazardous machinery" where the claimant was found to have, among other impairments, lumbar and cervical degenerative disc disease with cervical radiculopathy), *report and recommendation adopted*, 2018 WL 557898 (S.D.N.Y. Jan. 22, 2018).

Thus, although the ALJ did not specifically address each of the seven functions set forth in the Social Security Administration's regulations before concluding that Plaintiff could perform "light work," the ALJ "provided a thorough narrative discussion of the evidence of record regarding Plaintiff's abilities to perform relevant work-related functions in areas in which Plaintiff alleged limitation." *Davis*, 272 F. Supp. 3d at 172.  Specifically, the ALJ acknowledged Plaintiff's testimony concerning "difficulty bending, sitting or standing for short periods, walking more than half a block at one time, climbing stairs, lifting [and] pulling." ECF No. 11-2 at 24.  Likewise, the ALJ identified imaging reflecting conditions, such as lumbar and cervical radiculopathy, that could have caused such impairments. *Id*.  Yet the ALJ then explained why those impairments were not completely disabling, citing record evidence of independent ambulation, normal range of motion in the right hip and ankle, and normal coordination, balance, and reflexes. *Id.* at 25.  Further, the ALJ found persuasive the opinions of the state agency consulting physicians, both of whom concluded that Plaintiff could perform light work. *Id.* at 26.  Where, as here, "'the ALJ provided a thorough narrative discussion of [Plaintiff's] limitations,' and has built a 'logical bridge' from

the evidence to his conclusion, the RFC analysis does not require 'written articulation of all seven strength demands.'" *Contreras*, 239 F. Supp. 3d at (quoting *Banks*, 537 F. Supp. 2d at 85)).[10]

### B.     The ALJ's RFC Finding

Plaintiff then turns to the substance of the ALJ's RFC finding and claims that the ALJ failed to properly account for key evidence concerning his upper and lower extremity impairments. The Court finds no issue with the ALJ's analysis.

### 1.     Plaintiff's Lower Extremity Impairments

Plaintiff contends that the ALJ did not credit certain evidence relating to his lower extremity impairments or "explain how this evidence was considered in evaluating [his] residual functional capacity." ECF No. 15-1 at 6–7.  Let's take that evidence one at a time.  Plaintiff first points to a January 2013 x-ray which shows "deformity and sclerosis" in his right hip, secondary to a gunshot wound some years prior, and a repeat x-ray in 2014 that showed "no significant change" from the 2013 imaging.  *Id.* at 6.  Residual metallic fragments from the bullet could be seen around Plaintiff's hip.  *Id.*  Yet the ALJ did not ignore this evidence wholesale.  Indeed, the ALJ acknowledged that "[d]iagnostic imaging showed bullet fragments in [plaintiff's] right hip," and likewise acknowledged that Plaintiff reported pain in his right hip.  ECF No. 11-2 at 24. However, the ALJ then found that these impairments, even when combined with other ailments, were not totally disabling.  Relevant here, the ALJ highlighted records reflecting "the ability to ambulate independently," "normal range of motion in the right hip," "no signs of instability or

---

[10] Plaintiff's reliance on the Fourth Circuit's opinion in *Dowling v. Comm'r of Soc. Sec.* is unavailing.  986 F.3d 377 (4th Cir. 2021).  *Dowling* takes the position that the ALJ must evaluate each of the seven functions (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling), and "'[o]nly after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work' of which he believes the claimant to be capable."  *Id.* at 387 (quoting *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016)).  However, *Dowling* stops short of "adopt[ing] 'a *per se* rule requiring remand where the ALJ does not perform an explicit function-by-function analysis.'"  *Id.* at 388 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)).  More, as explained, courts in this Circuit have similarly rejected such a rule.  *See, e.g.*, *Kim M.*, 2021 WL 4033060, at *7; *Simmons*, 2019 WL 12251882, at *13; *Banks*, 537 F. Supp. 2d at 85 ("[A] written function-by-function analysis is not required.").

deformity during objective exams," and "good balance." *Id.* at 25.  On the basis of these records, the ALJ's conclusion that Plaintiff's right hip ailments did not reflect a disabling impairment was not erroneous.  *See, e.g.*, *Fisher v. Kijakazi*, No. 2:20-cv-02139, 2021 WL 6118745, at *3 (W.D. Ark. Dec. 9, 2021) (upholding ALJ's disability determination where, despite "x-rays of [plaintiff's] right hip suggest[ing] the existence of a cam deformity," plaintiff nonetheless showed normal range of motion, coordination, and independent ambulation), *report and recommendation adopted sub nom. Fisher v. Comm'r, Soc. Sec. Admin.*, 2021 WL 6118663 (W.D. Ark. Dec. 27, 2021); *Lucas v. Colvin*, No. 5:13-CV-742, 2014 WL 6666772, at *11 (E.D.N.C. Nov. 24, 2014) (upholding ALJ's discounting of physician's "assessment that plaintiff had disabling limitations" where another physician explained that while hip x-rays showed "sclerosis and osteophytes in the hip joints," plaintiff was noted to have "full range of motion of the hips").  While Plaintiff evidently believes that the imaging of his hip is reflective of greater limitations than those found by the ALJ, it is not the Court's role to determine whether the evidence might support an alternate RFC.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

Plaintiff turns next to a May 2018 examination which found that his range of motion in his right shoulder, hip, knee, and ankle were all diminished, as were his lower and upper extremity strength and his patellar reflex.  ECF 15-1 at 7 (citing ECF 11-7 at 77–80).  Again, this is not evidence the ALJ simply overlooked.  In fact, the ALJ's decision cites the very same examination that Plaintiff raises.  ECF 11-2 at 24.  Though Plaintiff contends the ALJ did not "explain how this evidence was considered in evaluating the Plaintiff's residual functional capacity," the Court

cannot agree.  While the ALJ's decision could have been more direct on this point, the obvious import of the ALJ's analysis is that the May 2018 examination was inconsistent with the other evidence in the record and was therefore discounted.  After having discussed the findings of the May 2018 examination, the ALJ then cited numerous physical examinations throughout 2017, 2018, and 2019 where Plaintiff's range of motion, strength, and reflexes were "normal."  *Id.* at 25. For instance, a February 2018 examination rated Plaintiff's right-side strength as "5/5."  ECF 11-7 at 67.  Further, that very same May 2018 examination also showed normal range of motion in Plaintiff's wrist, elbow, and cervical spine.  *Id.* at 77–78.  Another examination in May 2018 reported that Plaintiff had "[n]o coordination problems," was "[a]ble to walk independently," and had normal deep tendon reflex.  *Id.* at 161.  Importantly, a contemporaneous examination of his right hip showed no deformities, hip range of motion "within functional limits," no instability, 4/5 strength, and intact sensation.  *Id.*  Examinations in April, July, August, September, and November 2018 elicited identical findings with respect to Plaintiff's coordination, reflexes, and right hip.  *Id.* at 148, 151, 154, 164, 229.  When Plaintiff was examined in February 2019, his range of motion improvement and ambulation were said to be "good."  *Id.* at 174.  His right ankle range of motion was reported to be "full" in April 2019.  ECF 11-8 at 23.  In a September 2019 doctor's visit, the Plaintiff denied joint stiffness, muscle aches, and weakness, and presented with "normal" ankle range of motion.  ECF 11-7 at 184.  Other examinations throughout 2019 again reported no issues with coordination, independent ambulation, and appropriate reflexes, as well as hip range of motion "within functional limits," no instability, 4/5 strength, and intact sensation.  *Id.* at 197, 200, 202–03, 208–09, 211–12, 214–15, 217–18, 220, 223, 226.

Given the consistently normal findings with respect to Plaintiff's range of motion, hip strength, and reflexes over a several year period, it was not error for the ALJ to discount the May

2018 examination that reflected diminished range of motion, strength, and reflexes. *See, e.g.*, *Bailey v. Saul*, No. 2:19cv00011, 2020 WL 5524820, at *16 (W.D. Va. July 22, 2020) (upholding ALJ's disability determination where, despite concluding that the plaintiff "experienced major joint dysfunction in her hip, shoulder and knee," the ALJ nonetheless found plaintiff's impairments not disabling in part because "on several occasions, she demonstrated full strength and range of motion in her back, neck and extremities; a normal gait; intact sensation; full and symmetric deep tendon reflexes; no focal neurological deficits; and normal muscle tone and no extremity atrophy"), *report and recommendation adopted*, 2020 WL 5790408 (W.D. Va. Sept. 28, 2020).

Lastly, Plaintiff draws attention to records showing that, even after physical therapy, he showed "slow [walking] with guarding" and reduced trunk strength. ECF No 15-1 at 7. He also emphasizes regular findings of an antalgic (altered) gait. *Id*. As with the other evidence discussed here, the ALJ recognized these findings in his decision, expressly noting the Plaintiff's altered gait and his physical therapy treatment. While this evidence could support a finding of greater limitations than those found by the ALJ, it was also within the ALJ's discretion to conclude—in light of the countervailing evidence concerning Plaintiff's ambulation, strength, coordination, and range of motion—that the findings of an altered gait and reduced trunk strength were not totally disabling. *See, e.g.*, *Kim M.*, 2021 WL 4033060, at *5 (affirming the ALJ's decision that claimant could perform light work despite evidence showing "a mildly antalgic gait" where other records showed that, as here, plaintiff could walk without assistance); *Beavers v. Saul*, No. 1:19 CV 00140, 2019 WL 8509653, at *13 (N.D. Ohio Oct. 1, 2019) (affirming the ALJ's decision that claimant could perform light work despite evidence showing "chronic low back pain with decreased lumbar range of motion, occasionally decreased right lower extremity sensation, . . . and at times, a severely antalgic gait" because the claimant also maintained "normal sensation, generally normal

reflexes, and consistently independent ambulation"), *report and recommendation adopted sub nom. Beavers v. Comm'r of Soc. Sec.*, 2020 WL 966897 (N.D. Ohio Feb. 28, 2020).  An antalgic gait does not necessarily require that limitations on standing be incorporated into the RFC finding. *See, e.g.*, *Ruiz v. Berryhill*, No. 1:16-CV-359, 2017 WL 8219019, at *5 (N.D. Fla. Oct. 2, 2017) (recommending upholding the ALJ's finding that, despite "[p]laintiff's claim that he suffers from an antalgic gait," the plaintiff could "perform a full range of light work . . . with no exertional limitations due to antalgic gait"), *report and recommendation adopted*, 2018 WL 1278756 (N.D. Fla. Mar. 12, 2018).  In any event, the ALJ limited Plaintiff to "light work," which permits two hours of sitting during the course of an eight-hour work day.  Courts have found that a restriction to "light work" adequately accounts for an antalgic gait.  *See, e.g.*, *Brown v. Saul*, No. 1:19 CV 229, 2021 WL 1222116, at *9 (E.D. Mo. Mar. 31, 2021) (upholding ALJ's disability determination where ALJ found that a physician's opinion that the plaintiff "was limited to light work was consistent with the overall record demonstrating degenerative disc disease with symptoms of antalgic gait, limited range of motion, and back pain"); *Gregory v. Comm'r of Soc. Sec.*, No. 8:16-CV-1471-T-36, 2017 WL 4325397, at *11 (M.D. Fla. Sept. 29, 2017) (finding that an RFC limiting the plaintiff to "only occasionally climbing ladders, ropes, scaffolds, ramps, and stairs; only occasionally stooping, kneeling, crouching, and crawling; never being able to balance on slippery, uneven, or moving surfaces; and avoiding concentrated exposure to open, unprotected heights" properly accounted for "the effect of a slow antalgic gait"); *Mays v. Colvin*, No. 15-CV-02731, 2016 WL 3479070, at *24 (N.D. Cal. June 27, 2016) (upholding the ALJ's "light work" limitation for claimant with "an antalgic gait and some decreased flexion in the right knee").

Accordingly, the Court is satisfied that the ALJ adequately accounted for Plaintiff's lower extremity limitations.  The ALJ acknowledged the records and limitations Plaintiff emphasizes,

and then cited countervailing evidence to explain why the limitations were not totally disabling. *See* ECF No. 11-2 at 24–26. Despite evidence reflecting some range of motion, strength, and gait deficiencies, there is also substantial evidence that Plaintiff's range of motion, coordination, and balance were normal and he ambulated independently despite the strength and gait issues. *Id.* Because the ALJ's position is supported by substantial evidence—a "low" bar—the Court must defer to the ALJ's resolution of the conflicting information. *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021) (noting "the low bar of the substantial evidence standard"). Although the ALJ's explanation could have been clearer and the evidence, interpreted another way, might support a finding of additional limitations, the Court can discern the "logical bridge" from the evidence to the ALJ's RFC conclusion. *Lane-Rauth*, 437 F. Supp. 2d at 67 (finding that the ALJ must "build an 'accurate and logical bridge from the evidence to [his] conclusion'" (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

However, even if the ALJ's conclusion that Plaintiff can perform light work is not supported by substantial evidence for failure to properly address the lower extremity impairments, the Court still would not reverse the ALJ's decision. At step five of the disability analysis, the ALJ concluded that if Plaintiff was limited to light work consistent with the RFC finding, he could find work in the national economy. ECF 11-2 at 29. However, the ALJ also made an alternative finding: Even if Plaintiff were restricted to only *sedentary* work, he could still find work as, for example, a Document Preparer or Information Clerk. *Id.* As the ALJ put it, "even if the claimant was limited to sedentary work with no climbing or exposure to hazards, the vocational expert testified the claimant could still perform a significant number of jobs in the national economy." *Id.* Plaintiff does not challenge this alternative finding. Thus, even granting Plaintiff's contention that the ALJ's RFC finding is incorrect and he cannot, in fact, perform light work, he can

nonetheless perform sedentary work and therefore is not disabled.  *See, e.g.*, *Miller v. Berryhill*, No. 1:18-CV-00140, 2019 WL 2476743, at *2 (W.D. Ky. June 13, 2019) ("Even if the ALJ's RFC finding for light work is unsupported, reversal of the ALJ's decision is unwarranted in light of the ALJ's alternative fifth-step findings, which limited Plaintiff to sedentary work."); *Hough v. Comm'r of Soc. Sec.*, No. 12-14678, 2014 WL 764634, at *4 (E.D. Mich. Feb. 25, 2014) ("[T]he ALJ made an alternative step five finding that plaintiff could do sedentary work based on her transferrable skills, so the ALJ's ultimate finding of non-disability would be supported by substantial evidence even if plaintiff were limited to sedentary work" as opposed to light work.); *Smith v. Astrue*, 534 F. Supp. 2d 121, 130 (D.D.C. 2008) ("[T]he Court need not decide [whether the ALJ's conclusion that the claimant could perform light work is supported by substantial evidence] because the ALJ's alternative disposition that plaintiff could perform sedentary work is supported by substantial evidence.").

## 2.    Plaintiff's Upper Extremity Impairments

Plaintiff also attacks the ALJ's RFC finding for its alleged failure to account for his upper extremity limitations.  As with the lower extremity impairments, Plaintiff points to several pieces of evidence that he contends merited additional restrictions the ALJ did not find, including records reflecting C6/C7 cervical radiculopathy, carpal tunnel syndrome, numbness in his hands, and decreased range of motion and weakness in his right arm.  ECF No. 15-1 at 8–9.  Plaintiff appears to contend that these impairments merited an RFC that limited his "abilities to reach, handle, finger, or feel."  *Id.* at 9.  Again, the Court will address that evidence in turn.  Long story short, there were no errors in the analysis of the cervical radiculopathy and carpal tunnel syndrome, and to the extent there was error with respect to Plaintiff's reports of numbness in his hands, it was harmless.  And while Plaintiff's arguments concerning the range of motion issues in his right

shoulder and general right arm weakness present closer questions, the Court finds no reversible error in the ALJ's analysis.

As to the consideration of Plaintiff's C6/C7 cervical radiculopathy, Plaintiff has not shown reversible error.   The ALJ acknowledged that Plaintiff had "cervical spondylosis with radiculopathy," and while the ALJ mentioned only the radiculopathy at C5/C6 (ECF No. 11-2 at 24), Plaintiff does not explain any additional limitations caused by the C6/C7 radiculopathy.   In any event, Plaintiff is correct that the ALJ found cervical radiculopathy to be among Plaintiff's "severe" impairments, but the RFC does not reflect any restrictions on reaching, handling, or fingering.   Yet cervical radiculopathy does not necessarily demand upper extremity restrictions. *See, e.g.*, *Conoscenti v. Comm'r of Soc. Sec. Admin.*, No. CIV A 07-3359, 2008 WL 2446833, at *1 (D.N.J. June 13, 2008) (upholding the ALJ's determination that the plaintiff had the "residual functional capacity to perform the demands of light work" with no upper extremity restrictions despite having the "severe" impairments of cervical spondylosis and cervical radiculopathy); *see also Kami B. v. Comm'r of Soc. Sec.*, No. 2:17-CV-0368, 2018 WL 6069003, at *2 (E.D. Wash. Nov. 20, 2018) (similar, for plaintiff whose "severe" impairments included "cervical disc bulging with a possible cervical radiculopathy at an undetermined level").   More, neither the records showing C5/C6 radiculopathy, nor the records showing C6/C7 radiculopathy indicated any functional limitations.   The electromyography ("EMG") test that revealed "mild chronic C6 and C7 radiculopathy" merely states that the findings are "abnormal."   ECF 11-7 at 253.   Similarly, a doctor's note in October 2019 indicates that an "EMG shows right C5/6 radiculopathy," but, again, does not describe any actual, functional restrictions arising from those findings. *Id.* at 196.   The ALJ was not required to impose manipulative limitations given the lack of actual, functional limitations stemming from the diagnosis of radiculopathy.   *See, e.g.*, *Horton v. Berryhill*, No.

117CV1174, 2018 WL 3321201, at *4 (E.D. Va. June 19, 2018) (rejecting plaintiff's claim that the ALJ erred in failing incorporate limitations on her "abilities to reach, handle, finger, or feel objects" where, as here, "the EMG nerve study results [showing cervical radiculopathy] contain no statements of physical functional limitations"), *report and recommendation adopted*, 2018 WL 3312992 (E.D. Va. July 5, 2018).

Plaintiff also alleges that his "moderate right carpal tunnel syndrome" warranted upper extremity restrictions that are nowhere to be found in the ALJ's RFC finding.  ECF No. 15-1 at 8. Although the ALJ did not address the carpal tunnel syndrome finding in his RFC discussion, he did discuss it at step two of the sequential evaluation when determining Plaintiff's severe impairments.  ECF No. 11-2 at 20.  At that stage, the ALJ found that while Plaintiff's carpal tunnel syndrome was a medically determinable impairment, it was not severe because there was no evidence that the condition would be chronic, and even if there was, the condition was "minimal[ly]" treated, there was no recommendation for aggressive treatment, and it was controllable with "prescribed pain medications and other conservative treatments."  *Id.* Additionally, the ALJ noted that "during objective exams, the claimant frequently reported no carpal tunnel symptoms."  *Id.*  The ALJ therefore concluded that Plaintiff's right carpal tunnel syndrome was a non-severe impairment.  *Id.*

Nevertheless, Plaintiff says that the condition should have led to some manipulative limitations in the RFC.  The Court disagrees and finds that the ALJ adequately explained why the Plaintiff's carpal tunnel syndrome did not merit restrictions.  As an initial matter, the mere diagnosis of carpal tunnel does not require the ALJ to find that manipulative limitations are necessary.  *See, e.g.*, *Conover v. Colvin*, No. CIV. 13-6413, 2014 WL 7012502, at *20 (D.N.J. Dec. 12, 2014) (rejecting the plaintiff's argument that "because the ALJ found Plaintiff's carpal

tunnel syndrome to be severe at Step 2, it must necessarily limit her functioning to more than 'unskilled, light work as defined in 20 C.F.R. § 404.1567(b),' including 'frequent reaching, handling, or fingering or lifting up to a light exertional level'"); *Quinones-Santos v. Comm'r of Soc. Sec.*, No. 8:15-CV-985, 2016 WL 3344793, at \*5 (M.D. Fla. June 16, 2016) ("[T]he diagnosis . . . of [p]laintiff's carpal tunnel syndrome is not, in itself, determinative of disability, nor does it establish functional limitations resulting from the disorder."); *see also Laymon v. Comm'r of Soc. Sec.*, No. 1:18-CV-21, 2019 WL 1552500, at \*6 (E.D. Tenn. Feb. 12, 2019) ("Plaintiff is incorrect in arguing that because the ALJ found her mild [carpal tunnel syndrome] and osteoarthritis to be severe impairments at step two, specific manipulative limitations had to be incorporated into the RFC."). Further, in this case, the records did not reflect any specific limitations stemming from the carpal tunnel syndrome diagnosis, which the ALJ noted in his analysis when he concluded that the "medical and other evidence establish that" the condition would have "no more than a minimal effect on [Plaintiff's] ability to work." ECF No. 11-2 at 20. While the EMG and nerve conduction velocity testing revealed "moderate right carpal tunnel syndrome (median nerve entrapment at wrist) affecting sensory and motor components," there is no explanation clarifying what, exactly, that means, or—more importantly—any other evidence of associated functional limitations. ECF No. 11-7 at 253. Nor does Plaintiff identify any such limitations. That is reason enough for the ALJ not to have incorporated any manipulative restrictions into the RFC. *See, e.g.*, *Conover*, 2014 WL 7012502, at \*20 (upholding the ALJ's determination that the plaintiff could perform light work without manipulative limitations in part because of "the lack of objective evidence that her carpal tunnel syndrome was . . . connected to any specific functional limitations"); *Kirkland v. Astrue*, No. 3:10CV2693, 2012 WL 2064536, at \*7 (N.D. Ohio June 7, 2012) (upholding the ALJ's determination that the plaintiff could perform light work without manipulative limitations in part

because the "records do not reflect any functional limitations resulting from [the] carpal tunnel syndrome diagnosis"), *aff'd sub nom. Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425 (6th Cir. 2013); *Jackson v. Astrue*, No. CIV.A. 08-1027, 2008 WL 4589958, at *2 (E.D. Pa. Oct. 15, 2008) (upholding the ALJ's determination that the plaintiff could perform light work without manipulative limitations in part because "the record did not reveal objective evidence of any significant functional limitations associated with the disorder").

More, the fact that no carpal tunnel treatment was prescribed in this case also suggests that no manipulative limitations were required.  *See, e.g.*, *Conover*, 2014 WL 7012502, at *20 (upholding ALJ's determination that plaintiff had the "RFC to perform light work, including . . . hand and grip related activities up to a light exertional level" despite carpal tunnel diagnosis in part because of the "lack of treatment of carpal tunnel syndrome"); *Villanueva v. Astrue*, No. CIV.A. 11-5344, 2012 WL 6802077, at *3 (E.D. Pa. Sept. 4, 2012) (upholding the ALJ's omission of manipulative limitations from the plaintiff's RFC despite a carpal tunnel diagnosis in part because "there is no evidence that [the plaintiff] was ever treated for carpal tunnel syndrome"), *report and recommendation adopted*, 2013 WL 81389 (E.D. Pa. Jan. 8, 2013); *Jackson*, 2008 WL 4589958, at *2 (upholding the ALJ's determination that the plaintiff could perform light work without manipulative limitations in part because, as here, the plaintiff "received no treatment for her carpal tunnel syndrome").  The ALJ's decision to omit restrictions on reaching, handling, or fingering is "also supported by the opinions of the state agency medical consultants, who imposed no manipulative limitations on Plaintiff."  *Quinones-Santos*, 2016 WL 3344793, at *5 (concluding that "the evidence of record provides ample support for the ALJ's conclusion that [the] [p]laintiff's carpal tunnel syndrome imposed no greater limitations than those imposed by the ALJ"); *see* ECF No. 11-3 at 10, 20, 34, 46.

Plaintiff then turns to his complaints of numbness in his hands asserts that this, too, should have led the ALJ to include manipulative limitations in the RFC.  ECF No. 15-1 at 8–9.  The ALJ did not discuss Plaintiff's reports of hand numbness in his opinion.  There is mention of Plaintiff's reports of right-hand pain, but not of loss of sensation.  ECF No. 11-2 at 24.  That is problematic— at least in the abstract—because "[m]anipulative activities" such as "reaching and handling . . . naturally could be affected by hand/arm numbness."  *Laymon*, 2019 WL 1552500, at *6. Nonetheless, the Court does not see how the ALJ erred in this case.  It is well-understood that "[n]on-severe impairments which result in no functional limitations [need not] be included in the RFC."  *Richardson v. Colvin*, No. 13-CV-643, 2015 WL 65530, at *2 (N.D. Okla. Jan. 5, 2015). Here, the ALJ did not find hand numbness to be among Plaintiff's severe impairments, a conclusion with which Plaintiff evidently takes no issue.  Nor do the records that report hand numbness reflect any associated functional limitations.  The record indicates that Plaintiff reported hand numbness to his physicians from March to October 2019.  *See* ECF No. 11-7 at 196, 199, 205, 208, 217, 220.   However, *none* of those reports contain an explanation or any other information on whether or to what extent the numbness has caused functional limitations—that is, for instance, actual impairments of Plaintiff's manipulative abilities.  On this record, the Court cannot conclude that the ALJ erred by failing to specifically discuss Plaintiff's reports of hand numbness.  *See, e.g.*, *Cruz v. Colvin*, No. CV M-14-780, 2016 WL 749674, at *10 (S.D. Tex. Jan. 21, 2016) (upholding the ALJ's omission of manipulative limitations from RFC despite plaintiff's "severe bilateral hand numbness and pain" in part because "[p]laintiff does not identify in any of his briefs the precise limitations that are associated with his hand"), *report and recommendation adopted* 2016 WL 728182 (S.D. Tex. Feb. 24, 2016); *Gibson v. Astrue*, No. 5:08-CV-370, 2009 WL 5067757, at *9 (M.D. Fla. Dec. 15, 2009) (upholding the ALJ's finding of no manipulative

limitations despite the plaintiff's reports of "numbness in her hands" in part because "no treating doctor found that the numbness limited Plaintiff's ability to work, or imposed any functional limitations"); *George v. Barnhart*, No. 03-875, 2004 WL 2501878, at *5 (D. Del. Nov. 2, 2004) (finding that "the ALJ was not required to impose any work-related limitations concerning [p]laintiff's hand complaints" where, as here, "[p]laintiff's hand numbness was not even severe enough that she felt the need to mention it as a physical limitation in her DIB application"). Yet even if the ALJ should have discussed hand numbness, the error would be harmless for the same reason: no functional limitations were tied to Plaintiff's hand numbness. *See, e.g.*, *Poxson v. Comm'r of Soc. Sec.*, No. 2:11-CV-15503, 2012 WL 7656530, at *13 (E.D. Mich. Sept. 21, 2012) (finding that "the ALJ's possibly erroneous statement about ongoing pain" was "not harmful" because although "[p]laintiff testified that her hands and feet 'go numb,'" there was, as here, no evidence concerning "what [p]laintiff would be prevented from doing while her hands and feet were numb"), *report and recommendation adopted*, 2013 WL 811456 (E.D. Mich. Mar. 5, 2013); *see also Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021) ("[E]ven if we perceive error, we will affirm the Commissioner's [ultimate determination of disability] unless the error is prejudicial."). The Court will therefore not reverse the ALJ's decision for failure to directly address Plaintiff's reports of hand numbness.

The last of the upper extremity limitations Plaintiff argues should have resulted in additional RFC restrictions are the decreased range of motion in his right shoulder—such that he cannot lift his right above arm above the shoulder—and diminished strength rendering him unable "to carry more than a mug." ECF No. 15-1 at 9. Although this issue is closer, the ALJ's treatment of Plaintiff's range of motion and strength complaints does not warrant remand.

Turning first to Plaintiff's strength issues, he stated in his hearing testimony that he could not carry anything "heavier than a big cup or a big mug" in his right arm.  ECF No. 11-2 at 53. Though the ALJ did not reject that testimony specifically, he did find that, generally speaking, Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent with, and generally not supported by, the objective medical evidence of record." *Id.* at 25; *see also id.* at 26 ("The claimant's allegations are inconsistent with his statements regarding daily activities and the objective medical evidence. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.").  Of course, the law is clear that an ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  *Titles II & XVI:  Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2016 WL 1119029, at *5 (S.S.A. Mar. 16, 2016).  So, if the ALJ had merely relied upon lack of supporting medical evidence to discount Plaintiff's complaints of diminished arm strength, remand might be necessary.   But the ALJ did more than simply point to the absence of evidence supporting Plaintiff's alleged upper body weakness.   The ALJ also referred to evidence showing that Plaintiff's claims of weakness were contradicted by the objective medical evidence.  In particular, the ALJ cited a May 2018 examination showing that Plaintiff's upper body strength remained a 4 on a 5-point scale.  *Id.* at 25 (explaining that Plaintiff "showed reduced strength in his right upper extremity" and citing, among other records, ECF No. 11-7 at 79 (showing right arm strength of 4 on a 5-point scale)).  Given the contradiction between Plaintiff's hearing testimony and the medical records showing that he still maintained good upper body strength, the ALJ could lawfully discount

Plaintiff's claims of severe weakness. *See Ellison v. Saul*, No. 20-CV-0579, 2020 WL 7753294, at *11 (D.D.C. Dec. 8, 2020) (crediting ALJ's conclusion that the claimant's assertions concerning his symptoms were "inconsistent with the objective medical evidence and other evidence" in part because they were "belied by treatment notes"), *report and recommendation adopted* 2020 WL 7714734 (D.D.C. Dec. 29, 2020)).  "An ALJ is entitled to find an individual's statements to be less credible when they are contradicted by objective medical reports," *Petty v. Colvin*, 204 F. Supp. 3d 196, 210 (D.D.C. 2016), and "subjective evidence 'cannot take precedence over objective medical evidence or the lack thereof,'" *Holland v. Berryhill*, 273 F. Supp. 3d 55, 64 (D.D.C. 2017) (quoting *Pinkney*, 675 F. Supp. 2d at 21).

As to Plaintiff's decreased shoulder range of motion—and specifically, his alleged inability to raise his right arm above shoulder level—the Court similarly finds no reversible error in the ALJ's RFC decision.  Again, the ALJ never specifically addressed Plaintiff's claim that he could not lift his right arm above his shoulder.  ECF No. 11-2 at 53.  Yet the ALJ was not required to address each and every piece of evidence in the record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (noting that it is "well settled" that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party" (alteration in original) (quoting *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999))).  All the ALJ was obligated to do was "at least minimally discuss a claimant's evidence that contradicts the Commissioner's position,'" and, ultimately, build a "logical bridge" from the evidence to the RFC finding.  *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  The ALJ did that here when he acknowledged that medical records showed diminished range of motion in Plaintiff's right shoulder.  ECF No. 11-2 at 24 (citing ECF No. 11-7 at 77–80).  And the ALJ's subsequent reasoning and citations to

the record allow the Court to discern the "logical bridge" between the evidence—which reflects some limitations on arm movement—and the RFC, which contains no restrictions on Plaintiff's overhead reaching.

First, and as explained, the ALJ generally found Plaintiff's allegations concerning his physical ailments to be "not . . . entirely reliable." ECF No. 11-2 at 26. The ALJ had ample reason to do so—look no further than the substantial inconsistency between Plaintiff's claims of not being able to carry a large mug or cup and a prior examination showing only moderately diminished strength in his right arm, or his unsubstantiated claim of undergoing ankle surgery. *Id.* at 20; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004) (noting that medical records inconsistent with a claimant's allegations are a permissible reason to find a claimant not credible). More, the ALJ canvassed the medical records and concluded that Plaintiff "exhibited mostly normal objective physical status" throughout 2017, 2018, and 2019. *Id.* at 25. In fact, Plaintiff's shoulder issues arise only twice in a several year span. The first is the May 2018 examination, the results of which were mixed. On the one hand, Plaintiff's right shoulder range of motion was found to be half of normal. ECF No. 11-7 at 77. On the other hand, Plaintiff's right arm strength was only moderately diminished. *Id.* at 79. Given this record, the ALJ could conclude that Plaintiff could still perform a full range of light work. *See Toledano v. Colvin*, No. CV 15-6278, 2016 WL 4249827, at *10–11 (E.D. La. July 18, 2016) (finding substantial evidence to support the ALJ's finding that plaintiff was capable of the full range of light work despite decreased range of motion in plaintiff's right shoulder and diminished right shoulder strength), *report and recommendation adopted*, 2016 WL 4210839 (E.D. La. Aug. 10, 2016). The lone other mention of shoulder issues came in February 2019; at that time, Plaintiff reported right shoulder pain. ECF No. 11-8 at 27. Pain alone is not necessarily disabling. *See Pinkney*, 675 F. Supp. 2d

at 20–21 ("'Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof.'" (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986))).  A claimant's RFC is determined by "the most a claimant can do despite his or her limitations," not what they can do *without pain*.  *See Rodriguez v. Comm'r, Soc. Sec. Admin.*, No. 1:19-CV-02880, 2020 WL 2783681, at *2 (D. Colo. May 29, 2020) ("'[D]isability requires more than mere inability to work without pain,' and an RFC is an assessment of the most a claimant can do despite his or her limitations." (alteration in original) (internal citation omitted) (quoting *Brown v. Brown*, 801 F.2d 361, 362-63 (10th Cir. 1986))).  So, Plaintiff's isolated report of shoulder pain is hardly the type of evidence that might require remand.

Additionally, the ALJ found persuasive the opinions of the state agency consulting physicians, both of whom noted Plaintiff's diminished shoulder range of motion yet concluded that he could perform light work without reaching or other manipulative restrictions.  ECF No. 11-3 at 10–12, 34–36.  In considering Plaintiff's shoulder issues, the state agency physicians noted a prior disability assessment finding that Plaintiff had "[n]o restrictions or limitations from [an] orthopedic point of view."  *Id*. at 10, 21 34 (citing ECF No. 11-7 at 45).  Weighing that against the limitations reflected in other records, the state agency physicians reasonably concluded that Plaintiff could perform light work with no upper body (e.g., carrying, lifting, or manipulative) limitations.  *Cf. King ex rel. T.M.K.F. v. Comm'r of Soc. Sec.*, No. 17-12549, 2019 WL 2035590, at *7 (E.D. Mich. Feb. 6, 2019) (concluding the state agency physicians could find the claimant not disabled despite countervailing evidence in the record), *report and recommendation adopted*, 2019 WL 1324230 (E.D. Mich. Mar. 25, 2019).  It was therefore appropriate for the ALJ to credit the opinion evidence as "generally consistent with the overall record" and find it persuasive.  *See, e.g.*, *Eldridge v. Astrue*, No. 1:11-CV-723, 2013 WL 394385, at *6 (S.D. Ohio Jan. 31, 2013)

("[T]he ALJ properly credited the findings of the state agency physicians because their findings were consistent with the overall record evidence."), *report and recommendation adopted sub nom. Eldridge v. Comm'r of Soc. Sec.*, 2013 WL 1343870 (S.D. Ohio Apr. 2, 2013).  Finally, it is significant that the very same May 2018 examination cited by the ALJ showing range of motion reduction in Plaintiff's right shoulder also reflects full range of motion and strength throughout his left arm.  ECF No. 11-2 at 24 (citing ECF No. 11-7 at 77–79).  Plaintiff did not testify to similar lifting restrictions in his left arm, and there is no indication he could not engage in overhead reaching with his left side.  Courts have found that distinction relevant.  *See Redden v. Comm'r of Soc. Sec.*, No. 1:09-CV-330, 2010 WL 3522338, at *11 (S.D. Ohio Mar. 30, 2010) (finding that the ALJ did not err in failing to include overhead reaching restrictions in hypothetical questions to vocational expert despite diminished right shoulder range of motion because the claimant "was not limited in reaching overhead with his *left* upper extremity"), *report and recommendation adopted*, 2010 WL 3522337 (S.D. Ohio Sept. 7, 2010).  For all these reasons, the ALJ's decision to omit overhead reaching limitations from Plaintiff's RFC was supported by substantial evidence.  Indeed, it is unsurprising that the RFC does not include shoulder-related restrictions given how little shoulder issues feature in Plaintiff's lengthy medical history.

And to the extent the ALJ erred in failing to incorporate overhead reaching restrictions into the Plaintiff's RFC, it was harmless because the sedentary work the ALJ found that Plaintiff could perform does not require any overhead reaching in the first instance.  *See Saunders*, 6 F.4th at 4 (finding harmless error analysis applicable to review of disability determinations rendered by the Social Security Administration).  Recall that the ALJ found that, to the extent Plaintiff could not perform light work, he could nevertheless perform sedentary work.  ECF No. 11-2 at 29.  And "sedentary work does not require overhead reaching."  *Miller v. Colvin*, No. 1:12-CV-917, 2014

WL 340401, at *8 (S.D. Ohio Jan. 30, 2014) (finding that the claimant could perform the full range

of sedentary work despite his claims of overhead reaching impairments (citing 20 C.F.R. §

404.1567(a))), *report and recommendation adopted sub nom. Miller v. Comm'r of Soc. Sec.*, 2014

WL 1091018 (S.D. Ohio Mar. 18, 2014) ("[T]he Magistrate Judge noted that sedentary work does

not require overhead reaching, so [p]laintiff's contentions regarding his limitations in reaching

would not preclude such an RFC.").   The Social Security Administration's regulations define

"sedentary work" as "work involv[ing] minimal exertion demands, such as lifting no more than

ten pounds and occasionally lifting or carrying articles such as docket files, ledgers, and small

tools." *Redden*, 2010 WL 3522338, at *11 (citing 20 C.F.R. §§ 404.1567, 416.967).   With that in

mind, "[t]he ALJ could reasonably find that" sedentary work "rarely involve[s] reaching overhead

with the right—or both—upper extremities."   *Redden*, 2010 WL 3522338, at *11.[11]   In sum, the

---

[11] The Dictionary of Occupational Titles ("DOT") listings for the sedentary positions the vocational expert testified that Plaintiff could perform confirm that sedentary work does not involve much, if any, overhead reaching.  By way of example, one of the positions the vocational expert testified that Plaintiff could perform is Document Preparer. ECF No. 11-2 at 29, 71–72.  The DOT listing for that position contains the following description:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

U.S. Dept. of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) § 249.587–018.  Numerous courts have held that that description "does not indicate there is any need for reaching overhead" in the Document Preparer position. *Richard v. Colvin*, No. 12-5671, 2013 WL 4522082, at *10 (W.D. Wash. Aug. 27, 2013); *see also Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *6 (N.D. Ill. May 6, 2021) (finding that the position of document preparer does not "suggest[] that any overhead reaching is necessary"); *Stanley V. v. Berryhill*, No. 19-CV-02347, 2020 WL 7173261, at *5 (N.D. Cal. Dec. 7, 2020) ("[T]he DOT's descriptions for document preparer, order clerk, and charge-account clerk do not list any activities that necessarily implicate reaching overhead.") *M.d.H. v. Berryhill*, No. 6:17-CV-0049, 2018 WL 3970504, at *5 (D. Or. Aug. 20, 2018) ("There is no indication that overhead reaching is an essential, integral, or expected part of the jobs identified as ones [p]laintiff could perform—document preparer, addresser, and charge account clerk." (internal quotation marks omitted)).  The ALJ was not required to incorporate

ALJ's failure to address Plaintiff's claim that he could not lift his arms above shoulder level is inconsequential to the ultimate disability finding because, shoulder limitations or not, Plaintiff could still perform sedentary work.

### CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment of reversal (ECF No. 15) is **DENIED** and Defendant's motion for judgment of affirmance (ECF No. 16) is **GRANTED**.  A separate order dismissing the case will issue.

Date:  March 29, 2022                    _____
                                         G. MICHAEL HARVEY
                                         UNITED STATES MAGISTRATE JUDGE

---

exertional restrictions into the RFC where the jobs the ALJ found the claimant can perform do not involve such exertional activities, so any error was harmless.